AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
OCT 27 2017
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
) Case No. **17MJ4051**
Apple iPhone 7 Cellular Telephone; )
Model number A1778; )
IMEI number 359212079718894 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Methamphetamine and Cocaine |

The application is based on these facts:

See attached affidavit of HSI Special Agent David Owen

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_David Owen_
*Applicant's signature*

David Owen, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/27/17

_[signature]_
*Judge's signature*

City and state: San Diego, California

Hon. William V. Gallo, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Special Agent David Owen, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following:

   a. Apple iPhone 7 Cellular Telephone,
      Model number A1778,
      IMEI number 359212079718894
      (**Target Device 1**)

   b. Apple iPhone 4 Cellular Telephone,
      Model number A1349,
      Serial number C8QL70C3DP0V
      (**Target Device 2**)

(collectively the **Target Devices**) as described in Attachments A-1 and A-2, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952 and 960 – Importation of Controlled Substances. This search supports an investigation and prosecution of Oscar TOPETE (Defendant) for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Devices** were seized on or around August 10, 2017, at the San Ysidro, California Port of Entry. The **Target Devices** were seized from Defendant pursuant to his arrest for importation of federally controlled substances. The **Target Devices** are currently stored as evidence at the HSI Vault, located at 2255 Niels Bohr Court, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 and B-2.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit

1

is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.   I am a Special Agent (SA) with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been employed by ICE/HSI since May of 2008. I am currently assigned to the Deputy Special Agent in Charge (DSAC), San Ysidro Office, Contraband Smuggling Group IV, and my duties include investigating the trafficking of illicit controlled substances and the importation and distribution of illegal substances. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Controlled Substance Act. Prior to my assignment with the DSAC San Ysidro Office, I was assigned to the HSI Special Agent in Charge (SAC), San Diego Field Office, Asset Identification and Removal Group (AIRG) for approximately six years and five months. My duties with AIRG consisted of supporting HSI investigations with the identification and seizure of assets associated with criminal activity including drug trafficking organizations and the initiation of civil or criminal forfeiture action against these assets. I have had approximately twenty-three (23) weeks of intensive training at the Federal Law Enforcement Training Center, comprising basic criminal investigator training and ICE Special Agent Training. I have received training in identifying various controlled substances and conducting Title 21 controlled substances investigations. Prior to working for HSI, I worked with the Food and Drug Administration (FDA), Office of Criminal Investigations (OCI), for approximately thirteen years and eight months, where I held several administrative positions.

6.   In the course of my duties, I have worked as the case agent, directing specific drug-related investigations. I have also worked as a surveillance agent and

observed and recorded movements of individuals trafficking in drugs and of those suspected of trafficking in drugs. Additionally, I have participated in the execution of numerous search warrants. I have initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances. I have interviewed defendants and witnesses relative to the illegal trafficking of controlled substances. Through these experiences, I have gained a working knowledge and insight into the operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico through the San Diego, California international ports of entry.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics

and/or drug proceeds.

    g.    The use of cellular telephones by drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

8.    Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

9.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these cases that searches of cellular/mobile telephones yields evidence:

    a.    tending to identify attempts to import methamphetamine and cocaine or some other federally controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine and cocaine or some other federally controlled substance from Mexico into the United States;

4

 c.   tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine and cocaine or some other federally controlled substance from Mexico into the United States;

 d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine and cocaine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

 e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

 f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On August 10, 2017, at approximately 22:55 hours, Oscar TOPETE, a United States citizen, applied for permission to enter into the United States from Mexico through the San Ysidro, California Port of Entry. TOPETE was the driver and sole occupant of a 2016 Honda HRV bearing California license plates.

11. A Customs and Border Protection Officer (CBPO) was performing primary vehicle inspections at the San Ysidro POE in SENTRI lane #04, when he encountered TOPETE at his booth applying for admission into the U.S. (Note: SENTRI is an acronym for Secure Electronic Network for Travelers Rapid Inspection. SENTRI is a program that provides expedited CBP processing at the U.S./Mexico border for pre-approved, low-risk travelers through dedicated lanes and kiosks.) The CBPO noted that TOPETE's demeanor was not normal behavior for a daily traveler. The CBPO received a negative Customs declaration from TOPETE. The CBPO asked TOPETE where he was traveling to and TOPETE responded, "Chula Vista." Upon inspecting underneath the vehicle, the CBPO noted the undercarriage was inaccessible and muddy. The CBPO referred the vehicle for further inspection.

12. In the vehicle secondary lot at the San Ysidro POE, another CBPO inspected the 2016 Honda HRV driven by TOPETE. Prior to inspecting the vehicle,

5

the CBPO asked TOPETE if he had anything to declare and TOPETE replied no. TOPETE stated the vehicle belonged to his father. Upon inspecting the vehicle's trunk cargo area, the CBPO lifted the carpet and accessed the storage area of the vehicle where he discovered several packages wrapped in saran wrap and containing number markings on them. The CBPO placed handcuffs on TOPETE and escorted him into the security office.

13. Another CBPO was at the San Ysidro POE with his assigned canine when he responded to a radio call for a possible narcotics discovery in the vehicle secondary lot. Upon inspecting the 2016 Honda HRV, the assigned canine alerted to a trained odor coming from the trunk area of this vehicle. The vehicle was subsequently sent through the Z-Portal (X-ray). Upon review of the x-ray images, a CBPO observed anomalies in the spare tire well.

14. CBPOs retrieved a total of thirty-one (31) packages from the rear cargo area of the 2016 Honda HRV. Twenty-one (21) packages field-tested positive for the characteristics of cocaine and had a total weight of approximately 24.52 kilograms (54.06 pounds). The other ten (10) packages field-tested positive for the characteristics of methamphetamine and had a total weight of approximately 4.74 kilograms (10.45 pounds).

15. The **Target Devices** were discovered and seized by CBP at the time of TOPETE's arrest.[1] The **Target Devices** were then turned over to HSI, who assumed custody of the **Target Devices**.

16. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that TOPETE likely used the **Target Devices** to coordinate the importation of federally controlled substances into the United States. In addition, I know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages,

---

[1] During his post-arrest interview, Defendant acknowledged that the **Target Devices** belonged to him. Defendant gave HSI agents his consent to search the **Target Devices**, and pursuant to that consent, the agents downloaded the phones using a Cellbrite machine. This information is provided for purposes of full disclosure, but I ask the Court not to consider this information in making its probable cause determination whether to authorize the requested search and seizure warrant.

pictures and other digital information are stored in the memory of the **Target Devices** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of TOPETE, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**.

17. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional training, education and experience, I have learned that this requires planning and coordination in the days, weeks, and often months prior to the events. Given this, I request permission to search the **Target Devices** for items listed in Attachments B-1 and B-2 beginning on July 10, 2017, up to and including August 10, 2017.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store

information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target Devices** and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that TOPETE used the **Target Devices** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

22. Because the **Target Devices** were promptly seized during the investigation of TOPETE's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by TOPETE continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from July 10, 2017 through August 10, 2017.

//

8

23. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and the seizure of items listed in Attachments B-1 and B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*David Owen*

Special Agent David Owen
HSI Special Agent

Subscribed and sworn to before me this __27__ day of October, 2017.

_____
Hon. William V. Gallo
United States Magistrate Judge

9